UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ESTATE OF ANTHONY K. BROWN, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 08-cv-531 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

**I.   Introduction**

This action arises out of the devastating 1983 bombing of the U.S. Marine barracks in Beirut, Lebanon. The attack decimated the facility, killed 241 U.S. servicemen and left countless others wounded, and caused injuries to the servicemen who are a part of this action. The servicemen, joined by various family members, now bring suit against defendant Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS"). Their action is brought pursuant to the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 et seq., which was enacted as part of the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"). Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 (2008). That provision, codified at 28 U.S.C. § 1605A, provides "a federal right of action against foreign states" that sponsor terrorist acts. *Haim v. Islamic Republic of Iran*, 784 F. Supp. 2d 1, 4 (D.D.C. 2011) (quoting reference omitted).

**II.   Liability**

On December 16, 2009, this Court took judicial notice of the findings of fact and conclusions of law in *Peterson v. Islamic Republic of Iran*, which also concerns the Marine barracks bombing, and entered judgment in favor of the plaintiffs and against Iran and MOIS with respect to all issues of liability. *Brown v. Islamic Republic of Iran*, No. 08-cv-531 (D.D.C. Feb. 1, 2010), ECF No. 30 (citing *Peterson*, 264 F. Supp. 2d 46 (D.D.C. 2003) (*Peterson I*)). This Court then referred this action to a special master for consideration of plaintiffs' claims for damages. *Id.* at 2. Since the issue of liability has been previously settled, this Court now turns to examine the damages awards recommended by the special master.

## III.   Damages

Damages available under the FSIA-created cause of action "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). Accordingly, those who survived the attack may recover damages for their pain and suffering, as well as any other economic losses caused by their injuries; estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 82–83 (D.D.C. 2010).

"To obtain damages against defendants in an FSIA action, the plaintiff must prove that the consequences of the defendants' conduct were 'reasonably certain (i.e., more likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with this [Circuit's] application of the American rule on damages.'" *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115–16 (D.D.C. 2005) (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003) (internal quotations omitted)). As discussed in *Peterson II*, plaintiffs have proven that the defendants' commission of acts of extrajudicial killing and provision of material

support and resources for such killing was reasonably certain to—and indeed intended to—cause injury to plaintiffs. *Peterson v. Islamic Republic of Iran (Peterson II)*, 515 F. Supp. 2d 25, 37 (D.D.C. 2007).

The Court hereby ADOPTS, just as it did in *Peterson II*, *Valore*, *Bland*, *Anderson*, *O'Brien*, and *Davis*, all facts found by and recommendations made by the special master relating to the damages suffered by all plaintiffs in this case. *Id.* at 52–53; *Valore*, 700 F. Supp. at 84–87; *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 154 (D.D.C. 2011); *see also Anderson v. Islamic Republic of Iran*, No. 08-cv-535 (D.D.C. Mar. 20, 2012), 2012 WL 928256; *O'Brien v. Islamic Republic of Iran*, No. 06-cv-690 (D.D.C. Mar. 28, 2012), 2012 WL 1021471; *Davis v. Islamic Republic of Iran*, No. 07-cv-1302 (D.D.C. Mar. 30, 2012), 2012 WL 1059700. However, if the special master has deviated from the damages framework that this Court has applied in previous cases, "those amounts shall be altered so as to conform with the respective award amounts set forth" in the framework. *Id.* The final damages awarded to each plaintiff are contained in the table located within the separate Order and Judgment issued this date, and this Court discusses below any alterations it makes to the special master recommendations.

### A.   Pain and Suffering

Assessing appropriate damages for physical injury or mental disability can depend upon a myriad of factors, such as "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life." *Peterson II*, 515 F. Supp. 2d at 25 n.26 (citing *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 59 (D.D.C. 2006)). In *Peterson II*, this Court adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory

damages. *Id*. at 54.  In applying this general approach, this Court has explained that it will "depart upward from this baseline to $7–$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadripeligic, partially lost vision and hearing, or were mistaken for dead," *Valore*, 700 F. Supp. 2d at 84, and will "depart downward to $2–$3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire," *id*.  When a victim suffers severe emotional injury without physical injury, this Court has typically awarded the victim $1.5 million. *Id.* at 84–85.

After reviewing the special master reports, the Court finds that the special master correctly applied the damages framework outlined in *Peterson II* and *Valore*, and ADOPTS all of the special master awards for pain and suffering.

    **B.**    **Economic Loss**

In addition to pain and suffering, several plaintiffs who survived the attack have proven to the satisfaction of the special master, and thus to the satisfaction of the Court, lost wages resulting from permanent and debilitating injuries suffered in the attack or loss of accretions to the estate resulting from the wrongful death of decedents in the attack. *See Valore*, 700 F. Supp. 2d at 85.  The Court therefore ADOPTS without modification the damages awarded for economic loss recommended by the special master.

    **C.**    **Solatium**

This Court developed a standardized approach for FSIA intentional infliction of emotional distress, or solatium, claims in *Estate of Heiser v. Islamic Republic of Iran*, where it surveyed past awards in the context of deceased victims of terrorism to determine that, based on averages, "[s]pouses typically receive greater damage awards than parents [or children], who, in

turn, typically receive greater awards than siblings." 466 F. Supp. 2d 229, 269 (D.D.C. 2006). Relying upon the average awards, the *Heiser* Court articulated a framework in which spouses of deceased victims were awarded approximately $8 million, while parents received $5 million and siblings received $2.5 million. *Id.*; *see also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as 'an appropriate measure of damages for the family members of victims'") (quoting *Peterson II*, 515 F. Supp. 2d at 51). In the context of distress resulting from injury to loved ones—rather than death—courts have applied a framework where "awards are 'valued at half of the awards to family members of the deceased'—$4 million, $2.5 million and $1.25 million to spouses, parents, and siblings, respectively." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 n.10 (D.D.C. 2011) (quoting *Valore*, 700 F. Supp. 2d at 85); *see also Bland*, 831 F. Supp. 2d at 157. Children of a deceased victim typically receive an award of $3 million, while children of a surviving victim receive $1.5 million. *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003); *Bland*, 831 F. Supp. 2d at 157; *Anderson*, 2012 WL 928256, at *2.

This Court has recently expounded further on the *Heiser* framework. In *Bland* and *O'Brien* this Court held that—absent special circumstances—it is inappropriate for the solatium awards of family members to exceed the pain and suffering awards of the surviving servicemen. *Bland*, 831 F. Supp. 2d at 157–58; *O'Brien*, 2012 WL 1021471, at *3. In those cases, the servicemen received $1.5 million pain and suffering awards for their emotional pain and suffering, but did not receive an award for physical pain and suffering. *Id.* The Court reduced the awards of the family members in rough proportion to the *Heiser* framework to: $1 million for spouses, $850,000 for parents, $750,000 for children, and $500,000 for siblings. *Id.*; *accord Davis*, 2012 WL 1059700, at *6.

5

In applying this framework, however, courts must be wary that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010), and that deviations may be warranted when, *inter alia*, "evidence establish[es] an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship; medical proof of severe pain, grief or suffering on behalf of the claimant [is presented]; and circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27.

Again, this Court ADOPTS the special master awards as conforming to the *Heiser* framework unless otherwise modified below:

The special master found that Joseph A. Barile did not suffer physical injury in the Beirut bombing but that he did suffer from severe emotional injury. In light of this, the special master correctly recommended that Joseph receive a $1.5 million pain and suffering award. *See Bland*, 831 F. Supp. 2d at 157–58. While the special master did correctly recommend reduced awards for Joseph's family members, he did not recommend reduced awards in line with *Davis* and *Bland*. Therefore, the Court will award $850,000 to Mr. Barile's spouse, Angela Barile, and award $500,000 to each of his siblings: Michael Barile, Andrea Ciarla, Ann Marie Moore, and Angela Yoak. For similar reasons, the following special master awards are also modified in accordance with *Bland* and *Davis*:

Eugene Burns, father of Rodney Burns, from $750,000 to $850,000;

Alice J. Scaggs, mother of Rodney Burns, from $750,000 to $850,000;

David Burns, brother of Rodney Burns, from $350,000 to $500,000;

Mary Jean Hodges, mother of Maynard Hodges, from $500,000 to $850,000;

Loretta Brown, sister of Maynard Hodges, from $350,000 to $500,000;

Cindy Holmes, sister of Maynard Hodges, from $350,000 to $500,000;

Estate of Thomas Gunther, father of Daniel Kremer, from $500,000 to $850,000;

Estate of Christine Kremer, mother of Daniel Kremer, from $500,000 to $850,000;

Joseph Kremer, brother of Daniel Kremer, from $350,000 to $500,000;

Jacqueline Stahrr, sister of Daniel Kremer, from $350,000 to $500,000;

Teresa Gunther, sister of Paul Martinez, Sr., from $350,000 to $500,000;

Alphonso Martinez, brother of Paul Martinez, Sr., from $350,000 to $500,000;

Daniel L. Martinez, brother of Paul Martinez, Sr., from $350,000 to $500,000;

Michael Martinez, brother of Paul Martinez, Sr., from $350,000 to $500,000;

Tomasita L. Martinez, mother of Paul Martinez, Sr., from $500,000 to $850,000;

Ester Martinez-Parks, sister of Paul Martinez, Sr., from $350,000 to $500,000;

Susanne Yeoman, sister of Paul Martinez, Sr., from $350,000 to $500,000.

LaJuana Smith's brother Anthony Brown was killed in the Beirut bombing. Following the *Heiser* framework she would normally be entitled to a baseline solatium award of $2.5 million. *Heiser*, 466 F. Supp. 2d at 269. However, the special master recommended an upward departure to $3 million for LaJuana because "she suffered a 'nervous breakdown' following Anthony's death for which she sought medical treatment and was prescribed medication for approximately one year." Report of the Special Master (Estate of Anthony Brown), ECF No. 51, at 11–13, 17. Because of her exceptionally severe reaction to Anthony's death, this Court finds that the special master's recommended upward departure is warranted.

Brian Kirkpatrick was severely injured in the Beirut bombing. Following the *Heiser* framework, the special master recommended that his son, Sean Kirkpatrick, receive a $2.5

million solatium award. Report of the Special Master (Sean Kirkpatrick), ECF No. 33, at 7. Sean was born on December 17, 1983—almost two months after the October 23 bombing. This Court has previously held that "some lines must be drawn" and that after-born children are ineligible to receive solatium awards under FSIA § 1605A. *Davis*, 2012 WL 1059700, at *5; *see also Wultz v. Islamic Republic of Iran*, 08-cv-1460 (D.D.C. May 14, 2012), 2012 WL 1664027, at *10. Accordingly, Sean Kirkpatrick may not recover in this action and his claims are DISMISSED WITH PREJUDICE.

William Ray Gaines, Jr., was killed in the Beirut bombing. The special master found that Evelyn Sue Spears-Elliot, James S. Spears, and Mark Spears, the half-siblings of Mr. Gaines, did not have a close relationship with him—a prerequisite to a solatium award. Report of the Special Mater (Estate of Williams Ray Gaines, Jr.), ECF No. 52, at 19–20. The evidence shows that they were separated from Mr. Gaines at a young age and there is little evidence showing that they experienced the severe emotional distress necessary to sustain a solatium award. Therefore, their solatium claims will be DISMISSED WITH PREJUDICE. The special master did recommend a solatium award for William's mother, Carolyn Ruth Spears. Ms. Spears was separated from her son when he was five and there is no evidence that she saw him in the subsequent sixteen years. While there is evidence she suffered emotional distress when learning of William's death, the special master's downward departure from $5 million to $1 million is warranted.

Dennis West was killed in the Beirut bombing. The special master found a close relationship between Dennis and his father Charles F. West, but "no reason to deviate" from the established framework. Report of the Special Master (Family of Dennis West), ECF No. 45, at 13–14. In accordance with the *Heiser* framework, Charles F. West should have received a $5 million solatium award as the father of a deceased serviceman. 466 F. Supp. 2d at 269. The

special master, in error, only awarded $3 million. Therefore, the solatium award of Charles F. West will be increased to $5 million.

### D.     Punitive Damages

In assessing punitive damages, this Court has observed that any award must balance the concern that "[r]ecurrent awards in case after case arising out of the same facts can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect . . . .," *Murphy*, 740 F. Supp. 2d at 81, against the need to continue to deter "the brutal actions of defendants in planning, supporting and aiding the execution of [terrorist attacks]," *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 184 (D.D.C. 2010). To accomplish this goal, this Court—relying on the Supreme Court's opinion in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007)—held that the calculation of punitive damages in subsequent related actions should be directly tied to the ratio of punitive to compensatory damages set forth in earlier cases. *Murphy*, 740 F. Supp. 2d at 81–82. Thus, in *Murphy* this Court applied the ratio of $3.44 established in *Valore*—an earlier FSIA case arising out of the Beirut bombing. *Id*. at 82-83 (citing *Valore*, 700 F. Supp. 2d at 52); *see also Bland*, 831 F. Supp. 2d at 158; *Davis*, 2012 WL 1059700, at *7. Here, the Court will again apply this same $3.44 ratio, which has been established as the standard ratio applicable to cases arising out of the Beirut bombing. Application of this ratio results in a total punitive damages award of $630,487,651.

### E.     Prejudgment Interest

Plaintiffs' complaint also requests prejudgment interest. Am. Compl., at 80. Whether to award such interest is a question that rests within this Court's discretion, subject to equitable considerations. *See Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 263 (D.D.C. 2008). When this Court applies the *Heiser* and *Peterson II* damages framework, it

does not typically award prejudgment interest. *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 30 n.12 (D.D.C. 2011) (concluding that prejudgment interest was not warranted for solatium damages because the values set by the *Heiser* scale "represent the appropriate level of compensation, regardless of the timing of the attack."); *accord Harrison v. Republic of Sudan*, 10-cv-1689 (D.D.C. Mar. 30, 2012), 2012 WL 1066683, at *24; *Wultz* 2012 WL 1664027, at *16–17. Additionally, a significant portion of the delay in this case was caused by plaintiffs' failure to timely submit necessary documents to the special master. *See* Order Concerning Submissions to the Special Master, Apr. 12, 2011, ECF No. 28. Therefore, this Court DENIES plaintiffs' request for prejudgment interest.

**IV. Conclusion**

Iran is racking up quite a bill from its sponsorship of terrorism. After this opinion, this Court will have issued over $8.8 billion in judgments against Iran as a result of the 1983 Beirut bombing.[1] A number of other Beirut bombing cases remain pending, and their completion will surely increase this amount. Regardless, no award—however many billions it contained—could accurately reflect the countless lives that have been changed by Iran's dastardly acts.

In closing, the Court applauds plaintiffs' persistent efforts to hold Iran accountable for its cowardly support of terrorism. The Court concludes that defendant Iran must be punished to the fullest extent legally possible for the bombing in Beirut on October 23, 1983. This horrific act impacted countless individuals and their families, a number of whom receive awards in this lawsuit. This Court hopes that the victims and their families may find some measure of solace

---

[1] *See Peterson II*, 515 F. Supp. 2d at 60 (awarding victims $2,656,944,977 in compensatory damages); *Valore*, 700 F. Supp. 2d at 90 (awarding victims $290,291,092 in compensatory damages and $1 billion in punitive damages); *Murphy*, 740 F. Supp. 2d at 83 (awarding victims $31,865,570 in compensatory damages and $61,302,571.60 in punitive damages); *Bland*, 831 F. Supp. 2d at 158 (awarding victims $277,805,908 in compensatory damages and $955,652,324 in punitive damages); *Anderson*, 2012 WL 928256 at *4 (awarding victims $7,500,000 in compensatory damages and $25,800,000 in punitive damages); *O'Brien*, 2012 WL 1021471 at *4 (awarding victims $10,050,000 in compensatory damages and $34,572,000 in punitive damages); *Davis*, 2012 WL 1059700 at *8 (awarding $486,918,005 in compensatory damages and $2,161,915,942 in punitive damages).

from this Court's final judgment. For the reasons set forth above, the Court finds that defendants are responsible for plaintiffs' injuries and thus liable under the FSIA's state-sponsored terrorism exception for $183,281,294 in compensatory damages and $630,487,651 in punitive damages, for a total award of $813,768,945.

    A separate Order and Judgment consistent with these findings shall be entered this date.

    SO ORDERED.

    Signed by Chief Judge Royce C. Lamberth on July 3, 2012.